IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEREMY COCHRAN # 412-291
    Plaintiff                                     :

    v.                                                  :     CIVIL ACTION NO. RDB-14-3915

WARDEN MILLER                       :
WILLIAM BEEMAN[1]
DR. COLIN OTTEY                      :
    Defendants

**<u>MEMORANDUM OPINION</u>**

On December 17, 2014, the Clerk received a Complaint filed pursuant to 42 U.S.C. § 1983 from Plaintiff Jeremy Cochran, a Maryland Division of Correction ("DOC") prisoner housed at North Branch Correctional Institution ("NBCI"). Cochran alleged that NBCI medical staff are not providing proper treatment for his severe orthopedic problems, which include spina bifida[2] and scoliosis.[3] ECF No. 1. Warden Miller, who played no role in the alleged denial of medical care, was dismissed (Order of January 8, 2015, ECF No. 5) and William Beeman and Dr. Colin Ottey, M.D. (the "Medical Defendants"), were added by way of a Supplemental Complaint. ECF Nos. 4 and 5. Cochran also alleges he was not seen for sick call on February 10, 14, 17 and 20, 2015, in retaliation for filing this lawsuit. ECF No. 15. Cochran seeks money damages and injunctive relief mandating he be provided "proper medical care." ECF No. 1 at 4.

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of Defendants' names.

[2] Spina bifida is a type of birth defect known as a neural tube defect. The neural tube is the embryonic structure that eventually develops into the brain and spinal cord, and the tissues that enclose them. In spina bifida, a portion of the neural tube fails to close properly, causing defects in the spinal cord and bones of the spine. There are various forms of severity of the defect. *See* http://www.mayoclinic.org/diseases-conditions/spina-bifida/basics/definition/con-20035356.

[3] Scoliosis is a sideways curvature of the spine that most often emerges during a child's rapid growth spurt. While severe curvature can be disabling, mild cases require no treatment. *See* http://www.mayoclinic.org/diseases-conditions/scoliosis/basics/definition/con-20030140.

Pending is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by the Medical Defendants.[4] ECF No. 17. Cochran has responded and Defendants have replied. ECF 22 and 23. Upon review of papers and exhibits filed, the Court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion, construed as a motion for summary judgment, IS GRANTED and judgment IS ENTERED in favor of the Medical Defendants.

**Background**

Cochran suffers from spina bifida[5] and scoliosis, conditions which he believes cause him chronic lower back pain. He seeks a back brace and medical assignment for a double mattress, bottom bunk, and bottom tier status. He alleges that the inadequate treatment for his back condition has led to severe nerve damage, numbness in his legs and feet, and lost disc space in the spine that ultimately could cause paralysis. ECF No. 1 at 3 and No. 4 at 4.

The Medical Defendants have provided records to negate Cochran's claims. Cochran, thirty-four, does have chronic lower back pain. He further suffers from mental illness, including chronic depressive disorder, personality disorder, and a psychotic disorder coupled with auditory and visual hallucinations, and exhibits attention-seeking and manipulative behaviors. ECF No. 17-4, Affidavit of Colin Ottey, M.D., ¶5. Dr. Ottey's Affidavit, which is supported by sealed

---

[4] Also pending is a response to Cochran's correspondence alleging his "psych medication" was taken from him in retaliation for this lawsuit. ECF No. 9. Defendants' court-ordered response includes medical records and an Affidavit from Janice Gilmore, R.N., Regional Administrator for prison medical services provided in Western Maryland, including NBCI. The response demonstrates that Cochran is receiving treatment for mental health problems from employees of MHM Services, Inc., the contractual provider for mental health services, including prescription of psychiatric medications that are filled by a company known as Correct Rx. Gilmore's Affidavit further states that the Medical Defendants do not provide psychiatric services nor issue prescriptions and do not work for MHM Services, Inc. or Correct Rx. ECF Nos. 12-1 and 12-2.

[5] Cochran has produced an invoice showing that he was provided a lower back brace in 2002 to provide back support following a knee sprain. ECF No. 11 at 2. Additional records provided by Cochran show that despite his spinal problems and juvenile rheumatoid arthritis, he was sufficiently healthy to work for a paving company and also owned a small farm prior to his current incarceration. *Id.* at 3-4.

medical records (ECF No. 18-2), details the medical care rendered in the thirty months following Cochran's incarceration in the DOC. A summary of that care follows.

On March 20, 2013, Cochran was seen at the Maryland Reception Diagnostic and Classification Center ("MRDCC") for an intake health assessment where he claimed a medical history of spina bifida, scoliosis with severe damage. He was provided education on how to access prison medical services and was referred to a medical provider for further assessment. *Id.*, ¶ 6. On March 22, 2013, Cochran received an initial assessment, during which he did not mention his mental health problems and made no mention of his need for a back brace. Examination revealed mild scoliosis with normal musculature and no tenderness or joint deformity. He was diagnosed with a chronic back disorder and prescribed Naprosyn for one month. He was also placed on lower bunk status. *Id.*, ¶ 7.

Cochran was transferred to Patuxent Institution on April 2, 2013, where he was prescribed Prozac[6] for three months. *Id.*, ¶ 8. On April 19, 2013, Almon Baptiste, LPN, noted that Cochran did not report any symptoms related to his chronic conditions since he was last seen on April 2, 2013, denied problems with medications, and had no questions or concerns related to his care. Again, Cochran made no mention of requiring a back brace. *Id.*, ¶ 9. That same day, he was seen by Wacca Merid, M.D. for a chronic care visit, complained of back pain and stated his history of scoliosis. Cochran made no mention of the need for a back brace. On examination, Cochran's spine showed mild scoliosis, but was negative for posterior tenderness. His back showed normal flexion and musculature and no joint deformity. Dr. Merid refilled Cochran's naproxen[7] prescription. *Id.*, ¶ 10.

---

[6] Prozac is an antidepressant. *See* http://www.drugs.com/prozac.html.

[7] Naproxen is a nonsteroidal anti-inflammatory drug (NSAID) used to treat pain or inflammation. *See* http://www.drugs.com/naproxen.html.

3

On April 22, 2013, Cochran was seen by Tony Abumere, Ph.D., who noted that he displayed drug seeking behaviors. *Id.,* ¶ 11. The following day, Cochran placed a sick call slip seeking pain medication and muscle relaxers for back pain. *Id.,* ¶ 12.

Cochran was transferred to NBCI on May 1, 2013, and was examined on May 8, 2013 by Physicians Assistant Greg Flury during a chronic care evaluation. Cochran reported his back conditions and complained of intermittent back pain relieved by non-steroidal anti-inflammatory drugs ("NSAIDs"). Flury did not observe spinal deformity and renewed Cochran's naproxen prescription. Flury's notes do not mention the need for a back brace or special medical cell assignments. *Id.,* ¶ 14.

On May 16, 2013, Cochran submitted a sick call slip complaining of pain and requesting medication. He was examined by Registered Nurse Elizabeth Bank on May 18, 2013, who observed no abnormalities. Cochran was referred for further evaluation and provided with hot and cold compresses. He made no mention of requiring a back brace or special medical assignments due to back problems. *Id.,* ¶¶ 15-16.

On May 26, 2013, Cochran was seen by Carla Buck, R.N. for complaints of back pain that were not causing radiating numbness or tingling. *Id.,* ¶ 17. His prescription for naproxen expired on June 8, 2013, and was not renewed. *Id.,* ¶ 19. Cochran refused medical visits on five occasions between June 11 and November 7, 2013, but was seen by Dr. Ottey on November 16, 2013, for a chronic care visit unrelated to back pain. *Id.,* ¶¶ 20-25. Between May 26, 2013 and January 23, 2014, Cochran voiced no complaints of back problems or pain.

On January 23, 2014, Cochran submitted a sick call slip complaining of lower back and hip pain. *Id.,* ¶ 26. He was seen by Registered Nurse Kristi Cortez on January 27, 2014, where he complained of back and lower right leg discomfort and was provided Tylenol. *Id.,* ¶ 27.

On January 29, 2014, Cochran complained of muscle spasms in his lower back. *Id.,* ¶ 28. On February 3, 2014, he refused to be seen for a scheduled chronic care visit. *Id.,* ¶ 29. On February 10, 2014, Cochran requested muscle rub, pain medication, and muscle relaxers for his back pain. *Id.,* ¶ 30.

On February 12, 2014, Cochran was seen by Nurse Cortez for complaints of shoulder and back discomfort. He was provided muscle rub and hot and cold compresses, and did not mention a back brace or special medical assignments for his back problem. *Id.,* ¶ 31. He continued to complain of back and shoulder pain on two additional occasions during February of 2014, and was provided Tylenol. *Id.,* ¶¶ 32-33.

Cochran continued to complain of back pain. A March 8, 2014, examination by Nurse Krista Swan showed Cochran had normal motion and gait and no signs of weakness. Cochran was given new muscle rub which he reported provided relief. *Id.,* ¶¶ 34-35.

Cochran requested muscle relaxers in March and April of 2014. Between April 3 and July 25, 2014, he raised no additional reports of back pain. *Id.,* ¶¶ 3-38.

On July 27, 2014, Cochran placed a sick call slip complaining of back and hip pain. *Id.,* ¶ 39. He was examined by Nurse Swan on July 28, 2014. Swan found his gait steady and noted he had no difficulty climbing on and off of the examination table. Cochran was provided muscle rub and Ibuprofen. *Id.,* ¶ 40.

Cochran did not complain again about lower back issues until October 20, 2014, when he submitted a sick call slip and for the first time since his incarceration reported that prior to incarceration his back specialist ordered he wear a back brace. *Id.*, ¶ 42. When examined on October 23, 2014, Cochran walked to and from the medical unit without difficulty and was able

to get on and off the examination table without difficulty. Cochran was told to perform exercises and avoid heavy lifting, and was given Ibuprofen. *Id.*, ¶ 43.

On October 25, 2014, Cochran reiterated his demand for a back brace and stated that NSAIDs did not manage his pain. *Id.*, ¶ 44. When assessed by Registered Nurse James Hunt on October 28, 2014, Cochran's back was "quite stiff." He was given warm compresses and stretching exercises to perform on his own. *Id.*, ¶ 45.

At a November 7, 2014, chronic care visit, Nurse Swan found Cochran had mild scoliosis and was experiencing posterior tenderness. X-rays were ordered. *Id.*, ¶ 46. On November 14, 2014, Cochran refused to attend the scheduled x-ray appointment, indicating he did not want to miss his visit to the prison commissary. *Id.*, ¶ 47. He further indicated he did not want to reschedule the x-ray because "that's not what I'm wanting." *Id.*, ¶ 47.

A November 18, 2014 x-ray of the lumbar spine showed mild loss of disc space between the L5 and S1 discs. Spinal alignment was preserved. *Id.*, ¶ 48. When told of these results on November 24, 2014, Cochran reported numbness and tingling with pain. Nurse Swan prescribed Mobic[8] and Amitriptyline Hcl.[9] *Id.*, ¶ 49.

Cochran again complained of lower back pain and leg numbness on December 28, 2014. *Id.*, ¶ 50. On December 30, 2014, he reported to Nurse Hunt that his medications were ineffective. He displayed limited rear motion, but was able to bend forward well. *Id.*, ¶ 51.

Defendant Ottey examined Cochran on January 4, 2015, reporting that his current medication regime did not control his back pain and he suffered stiffness in his back and hip and

---

[8] Mobic (meloxicam) is an NSAID that reduces inflammation and pain caused by osteoarthritis or rheumatoid arthritis. *See* http://www.drugs.com/mobic.html.

[9] Amitriptyline (Elavil) is an antidepressant also prescribed for chronic pain. *See* http://www.drugs.com/amitriptyline.html.

sometimes had trouble getting out of bed.  Physical examination showed mild pain with motion.  Baclofen,[10] a muscle relaxer used to relieve spasm and stiff, was prescribed.  *Id.,* ¶ 52.

After again complaining of back and hip pain, Cochran on February 2, 2015, was seen by Nurse Hawk, who found no signs of tenderness, weakness, swelling, numbness or tingling and noted that Cochran's gait was within normal limits.  Hawk did note that Cochran had pain with movement and a limited range of motion.  *Id.,* ¶¶ 53-54.

On February 6, 2015, Cochran told Nurse Swan he had fractured his hip as a teenager when he was kicked by a cow.  Swan noted a popping sound with hip adduction and abduction and ordered an x-ray of the hip.  Swan discontinued Mobic prescription, added Indomethacin,[11] another NSAID, and placed Cochran on bed rest for three days.  *Id.,* ¶ 55.  Cochran later refused to have the x-rays taken.  *Id.,* ¶ 61.

## Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

---

[10] *See* https://www.google.com/search?q=baclofen&sourceid=ie7&rls=com.microsoft:en-us:IE-SearchBox&ie=&oe=&gws_rd=ssl.

[11] *See* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a681027.html.

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and

"whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))   Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*,

55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted). Cochran has not filed an affidavit under Rule 56(d). Moreover, the relevant medical records have been provided for review. Thus, the Court is satisfied that it is appropriate to address Defendants' motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because Cochran is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003).  In the context of denial of medical care, an Eighth Amendment violation arises when the actions of a defendant, or the failure to act, amount to

deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The parties do not dispute that Cochran suffers chronic back pain. The treatment provided by prison medical personnel appears to be both prompt and appropriate. Since his incarceration – and while at NBCI – Cochran has received repeated physical examinations and observations which show he has maintained normal range of motion, normal gait and displayed no difficulty walking or climbing on and off examination tables. Nothing in the record supports Cochran's claim that a back brace and medical assignments for lower bunk status, lower tier status, and a double mattress are medically indicated. Despite the fact that he has postponed or refused diagnostic testing, Cochran continues to be monitored regularly by prison medical staff as a chronic care patient for a medical issue unrelated to his back and hip pain and has been able to seek more immediate medical attention through the prison sick call process. Cochran's disagreement with the care provided and the determination that he does not need additional accommodation, without more, does not amount to an Eighth Amendment violation. *See Wright v. Collins*, 766 F.2d 841, 849(4th Cir. 1985) (disagreement with medical opinion is not deliberate indifference).

In granting summary judgment to Defendants the Court in no way implies that Cochran is not entitled to medical treatment for his serious condition. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*."

*Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977) (emphasis supplied).  The record evidence indicates that Cochran's requests are considered and his needs are addressed.  The fact that his specific requests for a brace or special housing accommodation are not approved does not reflect deliberate indifference.  The denial of such outcomes do not appear to be deliberate,[12] nor have they resulted in harm to Cochran.   To the extent some of Cochran's many complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  While Cochran may be frustrated with the pain associated with his chronic back pain, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3d Cir. 1970).  There are no exceptional circumstances alleged in this case.

## Conclusion

The Medical Defendants' dispositive motion will be granted. A separate Order follows.

Date:___October 14, 2015__                 _____/s/_____
                                                                                      RICHARD D. BENNETT
                                                                                      UNITED STATES DISTRICT JUDGE

---

[12] In order to prevail on a claim of retaliation, Cochran "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).   It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment, but a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone. *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).  Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *See ACL U of Maryland, Inc. v. Wicomico County*, Md.  999 F.2d 780, 785 (4th Cir. 1993).  Based on the medical record, Cochran cannot show that his requests for medical care were in any way denied due to retaliatory animus after he filed this lawsuit.